ARLINGTON HOUSING AUTHORITY & others[1] *vs.*
SECRETARY OF COMMUNITIES AND DEVELOPMENT
& another.[2]

Suffolk. October 2, 1990. - February 20, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Housing. Housing Authority. Regulation. Administrative Law*, Reg-
ulations.

Regulations governing tenant selection by local housing authorities,
promulgated by the Secretary of the Executive Office of Communities
and Development in connection with the Commonwealth's "707 rental
assistance program" and codified at 760 Code Mass. Regs. § 44.00
(1989), were held to be invalid as inconsistent with G. L. c. 121B, § 44;
moreover, the grant of regulatory power to the secretary under G. L.
c. 121B, § 34, to establish priorities in tenant selection is limited to the
"Housing Programs" governed by G. L. c. 121B, §§ 25-37, and does
not apply to the 707 rental assistance program governed by §§ 42-44A.
[356-360]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 15, 1989.

The case was reported to the Appeals Court by *Guy
Volterra*, J., on a statement of agreed facts. The Supreme
Judicial Court granted a request for direct review.

*Bernard Michael Ortwein, II*, for the plaintiffs.

*Alice Daniel*, Deputy Attorney General, for Secretary of
Communities and Development & another.

O'CONNOR, J. This case presents the question whether a
regulation governing tenant selection by local housing au-
thorities in connection with the Commonwealth's "707 rental
assistance program," promulgated by the Secretary of the

[1]Thirteen other housing authorities.
[2]Executive Office of Communities and Development.

Executive Office of Communities and Development and codified at 760 Code Mass. Regs. § 44.00 (1989), is valid. The plaintiffs are local housing authorities. As such, they operate State-aided and federally-aided public housing and rental subsidy programs pursuant to G. L. c. 121B (1988 ed.). The plaintiffs commenced this action in the Superior Court to obtain a judgment declaring "760 C.M.R. § 44.00. *et seq.*" to be invalid. The plaintiffs also sought to obtain preliminary and permanent injunctions against the defendants' enforcement of 760 Code Mass. Regs. § 44.00. It is clear that the primary focus of the plaintiffs' challenge is 760 Code Mass. Regs. § 44.08, but the defendants do not appear to contend that, even if § 44.08 is invalid, the remainder of § 44.00 should nevertheless survive.

A judge denied the prayer for preliminary injunctive relief. A second judge then allowed the parties' joint motion to report the case on the merits without decision. A statement of agreed facts was included as part of the report to the Appeals Court. This court granted the parties' joint application for direct appellate review. We now remand this case to the Superior Court for the entry of a judgment declaring 760 Code Mass. Regs. § 44.00 invalid and the entry of an injunction permanently restraining the defendants from enforcing those regulations.

General Laws c. 6A, § 2, establishes an Executive Office of Communities and Development serving directly under the Governor. That office is headed by a secretary pursuant to c. 6A, § 3. General Laws c. 23B, § 1, creates a "department of community affairs," and provides that that department "shall be under the supervision and control of the secretary of communities and development." The parties have stipulated that the defendant Secretary of the Executive Office of Communities and Development (hereinafter, the Secretary and the Executive Office are referred to collectively as EOCD) "is responsible for supervision and control of all local housing authorities and has authority to issue regulations governing their state-aided programs." See G. L. c. 23B, § 6.

Title 760 Code Mass. Regs. § 44.00 is entitled, "Chapter 707 Rental Assistance Program Standards and Procedures for Tenant Selection and Transfer." 760 Code Mass. Regs. § 44.08 states that local housing authorities shall determine in their discretion "whether an applicant that is otherwise eligible and qualified for rental assistance pursuant to these regulations is eligible for one or more of the following priority or preference categories: (1) *Priority Categories.* (a) First Priority — an applicant who is homeless and was displaced due to public action . . . (b) Second Priority — an applicant who is homeless or at risk of displacement from a primary tenancy ['a tenancy for which the applicant . . . contracted directly' (760 Code Mass. Regs. § 44.04)] . . . (c) Third Priority — an applicant who is at risk of displacement from other than a primary tenancy . . . or an applicant residing in a primary tenancy paying more than 50% of gross income toward shelter costs . . . (d) Fourth Priority — an applicant who is currently residing in a state public housing unit or a state-aided rental assistance unit and who requests a transfer for good cause. (e) Standard Applicants — all other applicants that are otherwise eligible and qualified for rental assistance pursuant to these regulations."

After the priority categories, the regulations provide that within each of the categories, certain preferences shall apply. 760 Code Mass. Regs. § 44.08 (2) (1989). The preferences are as follows: "(a) *Veteran* — for Chapter 707 housing in the following order: 1. families of Veterans with service connected disability; 2. families of deceased Veterans whose death was service connected; and 3. families of Veterans other than the above . . . (b) *Local Resident*; (c) *Affirmative Action* (if required)." The regulations then go on to provide guidelines for determining the affirmative action preference. 760 Code Mass. Regs. § 44.08 (3). The regulations as promulgated by EOCD contemplate that the preferences only apply within each priority category.

The plaintiff housing authorities correctly argue that, although EOCD has authority to issue regulations governing their State-aided programs, EOCD does not have authority

to promulgate regulations that conflict with G. L. c. 121B, § 44. *Bureau of Old Age Assistance of Natick v. Commissioner of Pub. Welfare*, 326 Mass. 121, 124 (1950). The plaintiffs also argue, we think correctly, that 760 Code Mass. Regs. § 44.08 conflicts with G. L. c. 121B, § 44.

General Laws c. 121B (1988 ed.) governs housing and urban renewal. Sections 25-37 of c. 121B fall under the subheading, "Housing Programs," and the statement of emergency in § 25 indicates that the statutory provisions within that subheading address "the clearance of substandard or decadent areas and the provision of housing for persons of low income." Sections 25-37 are directed at renovating existing housing projects and constructing new ones in order to provide decent and affordable housing for persons of low income. See G. L. c. 121B, § 26 (*j*).

Sections 42-44A of G. L. c. 121B contemplate a different program. Those sections come under the subheading, "Rental Assistance Program." The declaration of necessity in c. 121B, § 42, states as follows: "(*e*) [A] program of rental assistance operated through the housing authorities in the cities and towns would help end the undesirable concentration and segregation of families of low income, in separate, concentrated areas of our cities and towns and help give every citizen an equal opportunity to enjoy decent, safe and sanitary housing in a neighborhood of his own choice." In connection with such a rental assistance program, G. L. c. 121B, § 44, provides that "[t]he requirements with respect to rentals and tenant selection for low-rent housing projects shall apply to units leased by a housing authority under the rental assistance program, except that (*a*) as between applicants, who need not be residents of the city or town, but shall be residents of the commonwealth who applied at the same time and are eligible for occupancy, preference shall be given in the selection of tenants to the following types of applicants: first to families with four or more minor dependents, then to families displaced by public action, then to elderly persons of low income, and then to handicapped persons of low income or families of low income of which one or more

persons is handicapped; provided, however, that in the case of any project financially assisted by the federal government, preference shall be given in the selection of tenants in whatever manner is required by federal legislation or regulation . . . ." In setting out the applicants entitled to preference in the rental assistance program, the Legislature distinguished that program from the other housing programs addressed by c. 121B. The challenged regulation applies to a rental assistance program, specifically the 707 rental assistance program.

A comparison of 760 Code Mass. Regs. § 44.08 with G. L. c. 121B, § 44, shows that, with reference to tenant selection for the rental assistance program, the statute requires that "preference shall be given" to categories of applicants that are defined wholly without reference to homelessness or risk thereof, while homelessness and risk of homelessness are dominant considerations with respect to the "priority categories" set up by the regulation. If, as the plaintiffs argue, the regulation's "priority categories" are "preferences" within the meaning of the statute, there is clear conflict and the regulation cannot survive. However, if, as EOCD argues, priority categories distinguish applicants according to need, placing those equally in need in the same category, and "preferences" within the statutory meaning only operate within such categories in keeping with the priority-preference structure of 760 Code Mass. Regs. § 44.08, there is no conflict — at least there is no conflict that would invalidate the regulation's priority categories. EOCD's view is that the Legislature authorized EOCD to create by regulation priorities in tenant selection according to need, and reserved to itself only the determination of preferences within such categories with the result that there is no conflict between the statutory "preferences" and the regulation's "priorities."

In support of its position, EOCD points to language contained in G. L. c. 121B, §§ 32 and 34. Section 32 provides in relevant part that "[i]n the operation or management of state-aided low-rent housing projects an authority shall at all times observe the following requirements with respect to

rentals and tenant selection . . . (*f*) As between applicants equally in need and eligible for occupancy of the dwelling and at the rent involved, preference shall be given in the selection of tenants in [a specified] order." The use of the word "preference" in this context and the improbability that the Legislature intended that word to have different meanings in different places in the statute, EOCD contends, demonstrate that throughout G. L. c. 121B the Legislature intended "preferences" to operate only within prioritied categories of applicants with equal needs. With respect to c. 121B, § 34, EOCD calls our attention to the provision near the end of that lengthy section which says that "[t]he department shall promulgate rules and regulations relative to uniform standards for tenant selection which shall establish the order of priority governing the selection of tenants, and a housing authority thereafter shall be bound by such standards in its selection of tenants." EOCD argues that that provision makes clear that the Legislature intended the setting of priorities in tenant selection to be the responsibility of EOCD.

We agree that it is unlikely that the Legislature intended the repeated word "preference" to have different *meanings* within the same statute. It does not follow from that fact, however, that the Legislature intended all the preferences created by G. L. c. 121B to *operate* only within previously created categories. It is true, as EOCD points out, that c. 121B, § 32, does provide for preferences within categories of need. However, c. 121B, § 44, clearly appears to create preferences without any such limitation. Nothing in § 32, it seems to us, suggests that the Legislature intended the word, "preference," anywhere in c. 121B to have a different meaning from "priority" as those words are commonly used. The mere presence of both words in c. 121B, without more, is not enough to warrant the distinction in meanings or application for which EOCD argues.

We reject EOCD's further argument that the provision in c. 121B, § 34, that EOCD "shall promulgate . . . regulations . . . which shall establish the order of priority governing the selection of tenants," demonstrates a legislative intention to

leave to EOCD the determination of which applicants come first in the process of selecting tenants for the 707 rental assistance program. First, we observe that relatively near the beginning of § 34 the following provision appears: "[P]riority shall be given first to veterans of World War II of low income and to veterans of low income who have served in the active armed forces of the United States at any time between [specific dates]; then to veterans of low income . . . then to a person without regard to family status who is a veteran and is fifty years of age or over; [and then to other described persons]." If the two quoted provisions of § 34 are read together, it is apparent that EOCD's authority to establish the order of priority governing tenant selection in connection with the "Housing Programs" subdivision of G. L. c. 121B, is limited to the promulgation of rules and regulations not inconsistent with the statutorily created priorities. Furthermore, because the grant of regulatory power to establish priorities in tenant selection on which EOCD relies is contained in § 34, it is limited to the "Housing Programs" governed by §§ 25-37, and does not apply to the 707 rental assistance program governed by §§ 42-44A.

We conclude that 760 Code Mass. Regs. § 44.00 is invalid because of its inconsistency with G. L. c. 121B, § 44. Therefore, we remand this case to the Superior Court for the entry of a declaratory judgment to that effect and for an injunction permanently restraining the defendants from enforcing 760 Code Mass. Regs. § 44.00.

*So ordered.*