Garsh, J.
Plaintiff, Michael Panagakos (“Panagakos”), commenced this action seeking judicial review, pursuant to G.L.c. 40A, §17, of a decision of defendant, Fairhaven Planning Board (the “Board”), denying him a special permit to build a restaurant that required ten or more parking spaces. Both plaintiff and defendants move for summary judgment. For the following reasons, plaintiffs motion for summary judgment is DENIED and defendants’ motion for summary judgment is ALLOWED.
BACKGROUND
Panagakos owns a vacant lot on Alden Road in Fairhaven, Massachusetts. The lot is located in a business zone. Panagakos sought to construct a commercial/retail restaurant building on the vacant lot. The proposed restaurant would require ten or more parking spaces.
Pursuant to §2.2.3 of the Fairhaven Zoning By-Law (the “By-Law”), Panagakos applied for a special permit to build a restaurant that required ten or more parking spaces. The Board initially voted five in favor and one opposed to granting the special permit with the condition that a right-hand-turn only sign be placed on the locus for traffic exiting onto Alden Road. The plaintiff refused to accept that condition. The Board then voted on whether to grant the special permit, as requested, without the condition of the right-hand-turn only sign. Plaintiff failed to secure enough votes. Four members of the Board voted in favor and two opposed because “exiting traffic is not directed in a safe manner to the north with traffic flow and allows crossing solid double line marker interfering with southbound oncoming vehicles.”
DISCUSSION
First, the parties disagree as to whether the construction of a restaurant that requires ten or more parking spaces even mandates a special permit. Panagakos argues that §2.2.3 of the By-Law requires site plan approval of his proposed use, while the Board asserts that it requires the issuance of a special permit. That section provides that “(w]here any proposed use . . . in a . . . Business . . . district results in a requirement of a total of ten or more parking spaces for the previously existing and new demand [sic] combined pursuant to the provisions of section 3.7 of the By-Law, such use shall be deemed authorized by Special Permit granted by the Planning Board pursuant to the provisions of section 3.9 of this By-Law upon review by the Planning Board of the Site Development Plan. In all other cases not otherwise specified by the By-Law the Board of Appeals shall be the Special Granting Authority.”
“Generally, a zoning by-law must be read in its complete context and be given a sensible meaning within that context.” Selectmen of Hatfield v. Garvey, 362 Mass. 821, 826 (1973). “The intent of the by-law is to be ascertained from all its terms and parts as well as the subject matter to which it relates.” Murray v. Board of Appeals, 22 Mass.App.Ct. 473, 478 (1986).
A plain reading of §2.2.3 demonstrates that issuance of a special permit is required when a use, permitted as of right or authorized, results in the requirement of ten or more parking spaces. It cannot be construed as a regulation requiring site plan approval, but not a special permit. Section 2.2.3 merely provides for a review of a site plan in consideration of an application for a special permit. Such a review is quite appropriate since site plans may serve as an information-gathering tool to assist a local board in determining whether a special permit should be issued. Cf. Hallenborg v. Town Clerk, 360 Mass. 513, 521 (1971) (by-law requiring site plan review prior to issuance of permit not improper delegation because its purpose was “merely to ascertain that the applicant had applied with the pertinent by-law provisions”); Prudential Insurance Company v. Board of Appeals, 23 Mass.App.Ct. 278, 281, n. 6 (1986) (where some uses are permitted as of right and others upon compliance with the requirements for a special permit, “(i]n both cases, the approval of site plans is justifiable as an informational tool which discloses the specifics of the project, including the proposed location of buildings, parking areas, and other installations on the land, and their relation to existing conditions such as roads, neighboring land uses, public features, and ingress and egress roads”).
At all times prior to this appeal, the parties acted as if a special permit were required. Panagakos requested a special permit pursuant to §2.2.3, not approval of a site plan. Panagakos’ application was entitled “Petition For Special Permit Under The Zoning Ordinance” (emphasis added). In addition, the Board held a “Special Permit Public Hearing” and moved to approve the “Special Permit’ (emphasis added). The Board’s decision was entitled “Notice of Decision On Request For Special Permit' (emphasis added). The Board, of course, has an “ ‘intimate understanding’ not only of conditions within a town but also ‘of the background and purposes of the entire [zoning] bylaw.’ ” Murray, 11 Mass.App.Ct. at 479, quoting Fitzsimonds v. Board of Appeals, 21 Mass.App.Ct. 53, 57 (1985). The actions of the parties accurately reflect the requirement of §2.2.3 that there be a special permit when an authorized or permitted use results in the requirement of ten or more parking spaces.
Panagakos next argues that if a special permit were to be required, then the By-Law would violate G.L.c. 40A, §9.[2] More specifically, Panagakos contends that a restaurant use in a business district is one allowed as of right, and, as such, it cannot be subject to the grant of a special permit. Panagakos argues that the Board has created an unenforceable “super special permit” because it does not focus on the nature of the *305 use itself. The Board responds that Panagakos’ argument is based upon an artificially narrow interpretation of the word “uses” in G.L.c. 40A, §9.
Undoubtedly, a by-law which requires all uses in a zone to be subject to the issuance of a special permit is invalid. SCIT, Inc. v. Planning Board, 19 Mass.App.Ct. 101, 110 (1984). The by-law held invalid in SCIT purported to allow several commercial uses as of right while, at the same time, requiring every such use to be subject to a general special permit from the Planning Board. Id. at 104. See also Gage v. Egremont, 409 Mass. 355, 347-48 (1991). The special permit device is not, however, limited to the authorization of certain specified uses. It may, for example, be used to fine-tune dimensional requirements. Emond v. Board of Appeals, 27 Mass.App.Ct. 630, 634-36 (1989). Thus, c. 40A, §9 does not prohibit the Town of Fairhaven from classifying uses with respect to the intensity of off-street parking. The By-Law, unlike that considered in SCIT, does not make all uses in a zone subject to the issuance of a special permit. The By-Law adequately defines the uses that may be specially permitted. Uses as of right include any authorized or permitted use that does not require ten or more parking spaces.
Finally, Panagakos argues that the Board abused its discretion by basing its decision on external baffle conditions, as is permitted by §1.8 of the By-Law. Section 2.2.3 provides that a special permit may be granted pursuant to §3.9 of the By-Law. It does not mention §1.8 which provides, in part, that the Special Permit Granting Authority shall not issue a special permit if it appears debimental to the public interest because “(t]raffic generated or patterns of access and egress could cause congestion, hazard, or substantial change in established neighborhood character.”[3]
The decision of a permit granting authority should not be disturbed by a court unless it is based on legally untenable grounds or is unreasonable, whimsical, capricious or arbibary. Board of Assessors v. Commissioners of Hampshire County, 416 Mass. 404, 407 (1993); Federman v. Board of Appeals, 35 Mass.App.Ct. 727, 730-31 (1994). This court may not substitute its judgment for that of the Board. Garvey v. Board of Appeals, 9 Mass.App.Ct. 856 (1980).
The record demonsbates that the Board did not abuse its discretion in applying the factors set out in §1.8 of the By-Law to Panagakos’ application for a special permit. Section 3.9.4 requires that the proposed use be “in harmony with the general purpose and intent of the By-Law.” Nothing in §1.8 restricts its application to any particular “type” of special permit. Rather, it is broad enough to encompass any application for a special permit. Section 3.9.4 adds additional factors distinctive to an application for a special permit requesting the use of a locus that results in ten or more parking spaces. Neither §2.2.3 nor 3.9.4 preclude the Board from considering the factors set out in §1.8.
The Board, accordingly, legitimately considered external traffic flow. In doing so, the Board determined that the proposed use would generate exiting baffle that would not be directed in a safe manner to the north with baffle flow and would allow the crossing of a solid double line marker thereby interfering with southbound oncoming vehicles. Panagakos refused to agree to a condition that he erect a “No Left Turn” sign at the exit from its parking lot to ameliorate the baffle problem. The Board’s determination was not arbibary or capricious in light of the evidence presented, including the opinion of the Police Chief that the “volume of baffle on Alden Road in the immediate vicinity of the proposed development is at this time already at a critical level.”
ORDER
For the foregoing reasons, plaintiffs motion for summary judgment is DENIED and defendants’ motion for summary judgment is ALLOWED.

“Zoning ordinances or by-laws shall provide for specific types of uses which shall only be permitted in specified districts upon the issuance of a special permit. Special permits may be issued only for uses which are in harmony with the general purpose and intent of the ordinance or by-law, and shall be subject to general or specific provisions set forth therein; and such permits may also impose conditions, safeguards and limitations on time and use . . .” G.L.c. 40A, §9.

The full text of §1.8 reads as follows: “A Special Permit issued by a Special Permit Granting ((S.P.G.A.) [sic] as provided for in this By-Law, shall be required for certain uses, permitted in specified districts. Such Special Permits may be issued for specific uses, which are in harmony with general purpose and intent of this By-Law and shall be subject to additional conditions, safeguards and limitation on time, space and use as the designated S.P.G.A. may reasonably require. A Special Permit shall not be issued by an S.P.G.A. for an excluded or prohibited use as defined in this By-Law. The S.P.G.A. shall take into account the general purpose and intent of this By-Law and in order to preserve community values, may impose conditions and safeguards deemed necessity [sic] to protect the surrounding neighborhood, in addition to the applicable requirements of this By-Law and shall not issue a Special Permit which shall appear to be debimental to the Public Interest because . . . [flraffic generated or patterns of access and egress would cause congestion, hazard, or substantial change in established neighborhood character...”