Following a jury trial in the Juvenile Court on November 10, 2016, the court adjudicated the juvenile delinquent by reason of, among other things, one count of disturbing the peace, in violation of G. L. c. 272, § 53.[2] The judge sentenced the juvenile to one year of probation along with special conditions, which included a 6:00 P.M. curfew unless accompanied by a parent or grandparent. At the close of the Commonwealth's case, the juvenile moved for required findings of not guilty; as relevant here, the motion was denied as to the charge of disturbing the peace.
On December 29, 2016, the juvenile was arrested for disorderly conduct, violating his curfew condition, and resisting arrest.[3] The judge held an evidentiary hearing on January 19, 2017, and found, by a preponderance of the evidence, that the juvenile "violated the conditions of his probation by committing an offense of disorderly conduct and violation[ ] of his curfew." The judge subsequently revoked the juvenile's probation and committed the juvenile to the Department of Youth Services.
The juvenile appeals from both the adjudication of delinquency for disturbing the peace and from the order revoking probation. We affirm.
Background. 1. Jury trial. Based on the evidence presented at trial on November 10, 2016, the jury could have found the following facts. Around 6:00 P.M. on August 3, 2016, Brockton police Officer Brain Benvie responded to a motor vehicle pursuit near Brockton High School. Upon arriving at the area, Officer Benvie observed an unoccupied motor vehicle that had crashed. After Officer Benvie parked his cruiser, the juvenile came out of a backyard and started "walking towards the street up a driveway." One of the officers on the scene yelled, "Grab that guy. That's one of the passengers." Officer Benvie testified that the juvenile was "yelling and swearing" at the officers, and that because the juvenile was "hostile" and "slightly resistant," the officers "had to take him to the ground and handcuff him on the ground." This occurred "at the end of the driveway and on the sidewalk." Officer Benvie testified that while the officers were arresting the juvenile, the street was "heavily trafficked" due to the time of day, and that a "number of vehicles" stopped. Officer Benvie also testified that "[s]ome people in the neighboring houses came up to see what was going on." It took the officers approximately five to ten minutes to get the juvenile into the back of a cruiser. The jury found the juvenile delinquent on the charge of disturbing the peace.
2. Probation revocation hearing. The judge could have found the following facts from the evidentiary hearing conducted on January 19, 2017. On December 9, 2016, Sergeant Daniel Desmarais of the Lowell police department was working the overnight shift when he observed a motor vehicle run a red light around 2:30 A.M. Sergeant Desmarais observed "three younger-looking Hispanic males" inside the vehicle. Sergeant Desmarais pursued the motor vehicle with his blue cruiser lights and siren on. The vehicle took off at a "high rate of speed." The vehicle then stopped in the middle of the street and the three males got out of the vehicle and fled on foot. Sergeant Desmarais testified that while the three males were running up the middle of the street, a vehicle turned on to the same street and because the three males "were running directly in [the vehicle's] path," the driver had to "brake heavily" to avoid hitting them. The group of three males then split into two groups with one male running in one direction and the two other males running in another. Sergeant Desmarais pulled his cruiser next to the group of two males, which included the juvenile, and ordered them to "stop" and "get on the ground." The juvenile and the other individual did not comply, rather, they continued to flee and dispersed in different directions. The juvenile as well as another male were later located by other officers.
Discussion. 1. Adjudication of delinquency for disturbing the peace. The juvenile maintains that the Commonwealth presented insufficient evidence to support the jury finding him delinquent by reason of disturbing the peace, and, therefore, the judge erred in denying the juvenile's motion for a required finding. We disagree.
In reviewing the denial of a motion for a required finding, we "consider and determine whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient ... to permit the jury to infer the existence of the essential elements of the crime charged ...." Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), quoting from Commonwealth v. Sandler, 368 Mass. 729, 740 (1975). "The evidence may be primarily or entirely circumstantial, provided that, when viewed in the light most favorable to the Commonwealth, it and the inferences permitted to be drawn therefrom [are] of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt." Commonwealth v. Jansen, 459 Mass. 21, 27 (2011), quoting from Latimore, supra at 677. An inference "need only be reasonable and possible and need not be necessary or inescapable." Commonwealth v. Casale, 381 Mass. 167, 173 (1980).
"As used in G. L. c. 272, § 53, as amended by St. 1943, c. 377, the phrase 'disturbers of the peace' is construed in accordance with the common-law definition of the offense, making it a crime 'to disturb the peace of the public, or some segment of the public, by actions, conduct or utterances, the combination of which constitute[s] a common nuisance.' " Commonwealth v. Federico, 70 Mass. App. Ct. 711, 714 (2007), quoting from Commonwealth v. Jarrett, 359 Mass. 491, 493 (1971). We use a two-part test in determining whether an individual's conduct amounts to that of disturbing the peace. First, the activity must be that which "most people find to be unreasonably disruptive."[4] Id. at 714, quoting from Commonwealth v. Orlando, 371 Mass. 732, 735 (1977). Second, the activity must "in fact infringe on someone's right to be undisturbed."[5] Ibid., quoting from Orlando, supra.
Under this test and reviewing the evidence in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence presented at trial to allow the jury to find that the juvenile's conduct constituted a disturbance of the peace. Officer Benvie testified that the juvenile was "hostile," and "yelling and swearing" at the officers, and that such conduct, in combination with the arrest occurring on the sidewalk next to a "heavily trafficked" street, caused a number of vehicles stopped to observe the commotion. In addition, there was testimony that neighbors left their homes to observe the commotion. The fact finder therefore could reasonably infer that "the average bystander would have found the [juvenile's] conduct at the time of his arrest," (i.e., his yelling and swearing at the officers, his hostile behavior as well as slightly resistant conduct), "unreasonably disruptive," as evidenced by the stopped vehicles and neighbors leaving their homes to watch. Commonwealth v. Hokanson, 74 Mass. App. Ct. 403, 405-406 (2009).
2. Probation revocation for disorderly conduct. The juvenile next argues that there was insufficient evidence to support the judge's finding at the probation violation hearing that the juvenile was disorderly, and, thus, the judge erred in revoking the juvenile's probation based on that conduct. We disagree.
We review a probation revocation decision to determine "whether the record discloses sufficient reliable evidence to warrant the findings by the judge." Commonwealth v. Morse, 50 Mass. App. Ct. 582, 594 (2000). "The standard of proof in a probation revocation proceeding is the civil standard of preponderance of the evidence...." Commonwealth v. Hill, 52 Mass. App. Ct. 147, 154 (2001). "A proposition is proved by a preponderance of the evidence 'if it is made to appear more likely or probable in the sense that actual belief in its truth, derived from the evidence, exists in the mind or minds of the tribunal notwithstanding any doubts that may still linger there.' " Ibid., quoting from Sargent v. Massachusetts Acc. Co., 307 Mass. 246, 250 (1940).
"The statute authorizing prosecutions for disorderly conduct, G. L. c. 272, § 53, has been saved from constitutional infirmity by incorporating the definition of 'disorderly' contained in § 250.2(1)(a) and (c) of the Model Penal Code (1980). See Commonwealth v. Chou, 433 Mass. 229, 231-232 (2001) (summarizing history of § 53 and its construction)." (Footnote omitted.) Commonwealth v. Mulvey, 57 Mass. App. Ct. 579, 582 (2003).
"The resulting definition of 'disorderly' ... includes only those individuals who, 'with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof ...: (a) engage[ ] in fighting or threatening, or in violent or tumultuous behavior; or ... (c) create[ ] a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.' "
Ibid., quoting from Chou, supra at 232. "Public is defined as affecting or likely to affect persons in a place to which the public or a substantial group has access." Ibid. (quotation omitted).
Here, we agree with the judge that the Commonwealth satisfied the applicable burden of proof. The Commonwealth's evidence showed that the juvenile's conduct, i.e., fleeing from Sergeant Desmarais and running up the middle of a street at 2:30 A.M. , caused a turning vehicle to "brake heavily" in order to avoid hitting the juvenile. The judge specifically found, and we agree, that the juvenile
"engaged in a hazardous condition with an act that served no legitimate purpose; that it was reasonably likely to affect the public; and that, in fact, it recklessly created a risk of public inconvenience, annoyance or alarm as he ran directly up the middle of the street, such that a car coming around the corner had to brake hard to avoid hitting [the juvenile] as he ran at [2:30 A.M. ] up the middle of the street."
The juvenile's conduct "was risking not only his own safety but that of others," specifically, the driver of the vehicle who had to "brake heavily" to avoid collision. Commonwealth v. Bosk, 29 Mass. App. Ct. 904, 907 (1990). The judge did not err in finding, by a preponderance of the evidence, that the juvenile's conduct was sufficient to adjudicate the juvenile delinquent for disorderly conduct. Thus, the judge's decision to revoke the juvenile's probation was well within her discretion. See Commonwealth v. Durling, 407 Mass. 108, 111 (1990) ("If the judge determines that the [juvenile] is in violation, [she] can either revoke the probation and sentence the [juvenile] or, if appropriate, modify the terms of his probation. How best to deal with the probation is within the judge's discretion").
Adjudications of delinquency affirmed.
Order revoking probation affirmed.

The juvenile was also found delinquent on one count of assault, in violation of G. L. c. 265, § 13A. The juvenile does not challenge that adjudication on appeal.

The resisting arrest charge was dismissed on the same day.

We consider the time and place of the activity in determining whether it is "unreasonably disruptive." Federico, supra at 714-715, quoting from Commonwealth v. Orlando, 371 Mass. 732, 735 (1971).

"The first prong is normative and protects potential defendants from prosecutions based on individual sensitivities. The second prong requires that the crime have a victim, and thus subjects potential defendants to criminal prosecution only when their activities have detrimental impact." Orlando, supra.