NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-512                                        Appeals Court


COMMONWEALTH  vs.  PETER CHONGA.


No. 17-P-512.

Middlesex.     May 2, 2018. - November 1, 2018.

Present:  Rubin, Henry, & Desmond, JJ.


Stalking.  Assault and Battery.  Evidence, Threat.


Indictments found and returned in the Superior Court
Department on May 31, 2012.

The cases were tried before Mitchell H. Kaplan, J., and a
motion for a new trial, filed on July 27, 2015, was considered
by him.


Nelson P. Lovins for the defendant.
Elizabeth J. May, Assistant District Attorney, for the
Commonwealth.


RUBIN, J.  The defendant was convicted after a jury trial

of stalking in violation of G. L. c. 265, § 43 (a), and assault

and battery in violation of G. L. c. 265, § 13A (a).[1] He now appeals.

Background. Viewing the evidence in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), the jury could have found the following. The victim and defendant were married in Malawi and moved to Woburn together in the summer of 2009.[2] Their relationship was initially "good" but then deteriorated. The defendant became, in the victim's words, "controlling" and frequently demanded to check the victim's cellular telephone (cell phone) and electronic mail messages (e-mails). The defendant also became physically "abusive." The victim testified that the defendant "tried to choke" her, using two hands and squeezing her neck, and threatened to kill her, something that, she testified, he threatened to do "all the time."

In September of 2010, the victim moved into her own apartment in Burlington. Although she did not tell the defendant where she had moved, he first showed up within one or two weeks and continued to go to her apartment about four times

---

[1] The defendant was found not guilty of rape, attempted murder, assault by means of a dangerous weapon, witness intimidation, and a second count of assault and battery.

[2] The victim moved to the United States in or about January of 2008, working as an au pair for a family in Connecticut, and at her request, the defendant joined her in the United States in the summer of 2009.

per month.  She would let him in because "[i]t was embarrassing arguing outside when everybody's seeing you."  When the defendant went in, he would check her e-mails and cell phone, and he would telephone her friends and accuse them of sleeping with her.  The defendant also would telephone the victim "all the time" -- sometimes up to twenty times in a row and sometimes with blocked numbers -- asking her where she was, and he would follow her.  Around April 1, 2011, the defendant entered the victim's apartment, pointed a knife at the victim's neck, and threatened to use it to kill both her and himself.  One week later, the defendant again turned up at the victim's apartment uninvited.  The victim, understandably not wanting him to be there, lied by stating that she had to go to work.  When he discovered that this was a lie, he entered the victim's apartment, took her cell phone and the handset from the home telephone, threatened to kill her, and eventually hit her repeatedly with his boot.  The victim managed to escape to a neighbor's house, but not before, by the defendant's own admission, he grabbed her arm while she was running out the door.  After the victim escaped, her friend Patrick received calls from the victim's cell phone and home telephone numbers from a man he did not know who cursed at him and refused to tell him the victim's whereabouts.  Patrick then called the police and drove to the victim's apartment.

Discussion.  The defendant argues that the evidence was insufficient to support his conviction of stalking.  The statute provides that "[w]hoever (1) willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person which seriously alarms or annoys that person and would cause a reasonable person to suffer substantial emotional distress, and (2) makes a threat with the intent to place the person in imminent fear of death or bodily injury, shall be guilty of the crime of stalking . . . ."  G. L. c. 265, § 43 (a).

The defendant contends first that his repeated intimidating, threatening, and physically violent conduct directed at the victim was not "wilful" because it was not "intentional and by design."  Commonwealth v. Peruzzi, 15 Mass. App. Ct. 437, 443 (1983).  The defendant argues that this conduct was "motivated by jealousy and anger."  Contrary to the implication of his argument, this does not, even if true, indicate that the conduct was not intentional and by design, or that the defendant did not intend both the conduct and its harmful consequences.

Second, the defendant contends that his words did not constitute threats, because there was no evidence of a "fearful or apprehensive response."  In making this argument, he relies on the statement in Commonwealth v. Chou, 433 Mass. 229, 234

(2001), that "language properly may be understood and treated as a threat even in the absence of an explicit statement of an intention to harm the victim as long as circumstances support the victim's fearful or apprehensive response."

To begin with, we note that the defendant neither requested nor received an instruction that the threat element of stalking required that the victim subjectively be put in fear or apprehension. Rather, the jury were instructed without objection that the threat element of stalking would be met by proof beyond a reasonable doubt that "the defendant also made a threat with the intention of placing the alleged victim in imminent fear of death or bodily injury." See Virginia v. Black, 538 U.S. 343, 359 (2003) ("'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals"). On appeal, the defendant does not claim any error in that instruction, and the evidence was clearly sufficient to support the jury's finding on the elements of threat and intent.

In any event, the claim that there was no evidence of a fearful or apprehensive response is insubstantial. Assuming without deciding that the language in Chou means the definition of threat may include a requirement of subjective fear or apprehension, not just a statement that would objectively

"justify" such a response, Commonwealth v. Ditsch, 19 Mass. App. Ct. 1005, 1005 (1985), the jury readily could have found such a response here. The victim testified that, with respect to the incident in which the defendant, while pointing a knife at her neck, told her he would kill her, "[h]e scared [her]." Her friend Patrick likewise testified that immediately after that incident the victim sounded like "[s]omebody scared for her life."[3]

The defendant also argues with respect to the assault and battery charge that the Commonwealth failed to prove the absence of justification beyond a reasonable doubt. One form of "assault and battery is 'the intentional and unjustified use of force upon the person of another, however slight.'" Commonwealth v. Burno, 396 Mass. 622, 625 (1986), quoting Commonwealth v. McCan, 277 Mass. 199, 203 (1931). The jury

---

[3] The jury acquitted the defendant of attempted murder with respect to the choking incident and of assault by means of a dangerous weapon with respect to the knife incident. Even if the jury had based its threat finding on one or both of these incidents, and not the boot incident (which would have been enough on its own, since the stalking statute requires only one threat), and even if doing so would have created an inconsistent verdict, which we do not decide, inconsistency of verdicts would not in these circumstances undermine the guilty verdict for the crime of stalking. See Commonwealth v. Elliffe, 47 Mass. App. Ct. 580, 584 (1999) ("[A] defendant is not entitled to relief where a jury returns factually inconsistent verdicts; problems arise only where verdicts are legally inconsistent -- i.e., where, removed from the factual context of the particular case, the government could not possibly have proved the elements of both crimes with respect to the defendant").

could have found beyond a reasonable doubt with respect to the incident on April 8, 2011, that the defendant was having an argument with the victim, was upset with her, and, therefore, grabbed her arm as she was running out the door.  (Indeed, they could have found that the defendant himself told this to an officer of the Burlington police department.)  That is an intentional and unjustified use of force upon the person of the victim.  The defendant's argument to the contrary -- that his action was justified because "a sudden non-violent grasp at a spouse during an argument must fall outside the crime of battery because of marital expectations of familiarity" -- has no support and is anathema to the modern law of the Commonwealth, which recognizes the fundamental humanity, and inviolable personal integrity, of all persons, regardless of gender, married, or single.

Judgments affirmed.

Order denying motion for
new trial affirmed.