Commonwealth *v.* Robicheau.

## COMMONWEALTH *vs.* JAMES ROBICHEAU.

Suffolk. May 3, 1995. - September 13, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Abuse Prevention. Protective Order. Practice, Criminal,* Required finding, Verdict, Instructions to jury. *Constitutional Law,* Freedom of speech and press.

Evidence at the trial of a complaint for violation of a protective order issued pursuant to G. L. c. 209A was sufficient for the jury to have found beyond a reasonable doubt that the defendant placed the victim in reasonable apprehension that physical force might be used against her, and the defendant's motion for a required finding of not guilty was properly denied. [180-182]

The First Amendment to the Constitution of the United States does not protect a defendant's assaultive conduct that placed a victim in reasonable apprehension of imminent serious physical harm in violation of an order to refrain from abusing the victim issued pursuant to G. L. c. 209A. [182-183]

At the trial of complaints for violation of a protective order issued pursuant to G. L. c. 209A and for threatening to commit a crime, the jury's acquittal of the defendant on the threats charge and their conviction of the defendant of violating G. L. c. 209A did not deny the defendant due process or require reversal of his conviction. [183-184]

At the trial of complaints, there was no substantial risk of a miscarriage of justice in the judge's instructions to the jury on the elements of a violation of G. L. c. 209A. [184-185]

COMPLAINT received and sworn to in the Dorchester Division of the District Court Department on June 15, 1992.

On appeal to the jury session of that division, the case was tried before *Robert P. Ziemian,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert M. Breen* for the defendant.

*John P. Zanini*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. On September 24, 1992, a jury of six sitting in the Dorchester Division of the District Court Department convicted the defendant, James Robicheau, of violating a protective order issued pursuant to G. L. c. 209A (1994 ed.). The jury acquitted him of a separate charge of threatening to commit a crime. See G. L. c. 275, § 2 (1994 ed.). He received a sentence of two and one-half years in a house of correction, with six months to be served and the remainder to be suspended. This sentence has been stayed pending appeal.

On appeal, the defendant claims that (1) the Commonwealth presented insufficient evidence that he violated G. L. c. 209A; (2) he was criminally sanctioned for statements that constituted speech protected by the First Amendment to the United States Constitution; (3) his right to due process was violated because the jury returned inconsistent verdicts; and (4) the trial judge failed to provide adequate jury instructions regarding the elements which must be proved in order to find a criminal violation of G. L. c. 209A. We affirm the conviction.

Based on the evidence presented at trial, the jury could have found the following facts.

On December 2, 1991, the victim obtained a protective order pursuant to G. L. c. 209A (209A order). The 209A order, which was effective until December 2, 1992, required the defendant to refrain from abusing the victim and to remain away from her residence. During the past four years, the victim had sought and obtained successive 209A orders against the defendant.[1] The 209A order at issue was a "renewal" of a previous order.

The defendant and the victim had been married since September 6, 1980. They had a minor child, of whom the victim had temporary custody pursuant to the 209A order. The de-

---

[1]The defendant had been present at some of the hearings at which the victim sought the 209A orders, and stipulated he was aware of the terms of the December 2, 1991, order.

fendant did not have visitation rights, but the victim permitted him regular visits.

On June 13, 1992, the defendant attended an awards ceremony at his son's school. The victim was also present. At the ceremony, the defendant and the victim discussed arrangements for the defendant's visit with the child that weekend. The victim told the defendant to return the child the next day to her mother's residence, which was the usual place for the child to be dropped off.[2]

On the next day, June 14, 1992, the defendant returned the child to the victim's home instead of to her mother's residence. The victim was on the telephone with her mother when the defendant drove up to the victim's building. The victim resided on the top floor of a three-family house. The defendant parked his automobile directly in front of the house.

The victim laid the telephone down, went to her front window, and opened it. She yelled to the defendant that he was in violation of the 209A order, told him not to get out of the automobile, and threatened to call the police if he did.

Despite the victim's warning, the defendant left the automobile. He stood on the street, looked up to the victim's window, and started yelling at her. The defendant told the victim to "shut the f— up" and that he would do exactly as he pleased. The defendant also "gave [her] the finger." He did not enter the victim's apartment or the three-family house.[3]

The defendant then told his son to get back into his automobile, while the victim told him to come in quickly. Obeying his mother, the boy went inside. While the boy was

---

[2]The defendant denied that his mother-in-law's residence was the regular drop-off point, asserting that it alternated between that location and the victim's residence. The defendant also testified that the victim had instructed him to bring the child "home." The victim's mother corroborated the defendant's testimony. She further testified that the victim usually informed her if the defendant was to return the child to her residence, and that on June 13, 1992, the victim did not so inform her.

[3]The victim testified that there was a lock on both the front door of the three-family house and the door to her apartment. The front door of the house, however, often was left open by its residents.

climbing the stairs, the victim kept going from her apartment door to the window. The defendant then left, his tires squealing.

The victim picked up the telephone again, and spoke with her mother, who advised her to telephone the police. The victim testified that at this point, she was very scared and very upset. She wanted to telephone the police from somewhere else, because she was afraid that the defendant would return.

The victim attempted to telephone the defendant, thinking that she could leave her own residence if she knew he was home. After six or seven rings, the defendant did not answer the telephone. The victim then telephoned the defendant's sister, who lived in the same building as he did. The defendant's nephew answered. He went downstairs to check for the defendant, returned to the phone, and told the victim that the defendant was home. The victim told the nephew that she did not want to speak with the defendant.

The victim decided to go to her mother's residence. While she was leaving, the defendant telephoned her. The defendant told the victim that he was "sick of all of this" and that he was going to kill her. He stated that he was "not playing anymore," that he was coming back to the apartment, and that he "swore to God" he was going to kill her. The victim hung up. Believing that the defendant now intended to kill her, and afraid to leave her home, the victim telephoned the police.

The police went to the defendant's home and arrested him. After his arrest, the victim and a male companion went to the police station to meet with the bail bondsperson. Because of her anxiety over the defendant's possible release, she asked the bondsperson to set a high bail.

Five weeks earlier, another incident occurred in which the defendant returned his son to the victim's home instead of her mother's residence. During that incident, the victim had informed the defendant as he was walking up the stairs that

he was in violation of the 209A order. She asked him to leave, which he did.[4]

1. *Sufficiency of the evidence.* At the close of the Commonwealth's case, the defendant made an oral motion for required findings of not guilty, contending that the Commonwealth had not shown the elements necessary for a violation of G. L. c. 209A. The judge denied the motion. Afterwards, in instructing the jury, the judge submitted the charge of violation of G. L. c. 209A solely on the theory that the defendant violated the order to refrain from abusing the victim.[5] Therefore, we assume that the jury followed the judge's instruction and based their verdict on this theory of liability. See *Commonwealth* v. *Foster*, 411 Mass. 762, 766 (1992).

---

[4]There was another incident at the victim's residence on May 30, 1992, in which the defendant assaulted the victim. During this incident, the defendant kicked open the door to the victim's apartment, hitting her in the shoulder. When the victim attempted to call the police, the defendant pulled the receiver out of her hand, shoved it into her face, and pulled the telephone so that it unplugged from the wall. The defendant then grabbed the victim by the throat and pushed her against the wall, choking her. The defendant released the victim when the child began to scream, knocking her into the wall. The defendant told his son that his mother was nothing but a "f——ing slut and whore."

The judge admitted testimony regarding this incident in evidence, but instructed the jury that they were to use it only as evidence of threatening the victim, and not as evidence of the violation of G. L. c. 209A. This instruction was erroneous and gave to the defendant a benefit greater than that to which he was entitled. This evidence was relevant to prove that the victim had a reasonable fear of physical harm at the hands of the defendant. See *Commonwealth* v. *Gordon*, 407 Mass. 340, 351 (1990).

[5]The relevant definition of abuse as set forth in G. L. c. 209A, § 1 (1994 ed.), is as follows: "As used in this chapter the following words shall have the following meanings:

" 'Abuse', the occurrence of one or more of the following acts between family or household members:

"(*a*) attempting to cause or causing physical harm;

"(*b*) placing another in fear of imminent serious physical harm;

"(*c*) causing another to engage involuntarily in sexual relations by force, threat or duress."

For discussion of this portion of the statute, see *Commonwealth* v. *Gordon, supra* at 348-350. See also *Commonwealth* v. *Jacobsen*, 419 Mass. 269, 274 (1995).

There were no allegations that the defendant physically harmed the victim, caused her to engage involuntarily in sexual relations, or attempted to do either. Therefore, any violation of the order to refrain from abuse must have been based on an allegation that the defendant placed the victim in fear of imminent serious physical harm. *Commonwealth* v. *Gordon*, 407 Mass. 340, 348-349 (1990). We have stated that this definition of abuse closely approximates the common law description of the crime of assault. *Id.* at 349.

In reviewing the denial of a motion for a required finding of not guilty, we determine whether, on the basis of the evidence viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985). *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). Therefore, we must determine whether a rational jury could have found that the actions and words of the defendant placed the victim in reasonable apprehension that physical force might be used against her.

In this case, the jury could have found that the defendant had parked his automobile in front of the victim's home, from which he had been enjoined by court order to remain away. Further, the jury could have found that, when he had previously come to the victim's residence, she had requested that he leave and informed him that his presence was in violation of the 209A order. The credible evidence was that on this occasion, when the victim made the same request, the defendant got out of his automobile, stood in the middle of the street in front of her residence, yelled obscene language, and made an obscene gesture. He also made an ambiguous statement that he would do exactly as he pleased. He then drove away with a loud, aggressive display. Soon thereafter, the defendant stated over the telephone that he would kill her.[6]

---

[6]The defendant suggests that the jury could only consider this last statement as evidence of threatening to commit a crime. As the judge gave no

This evidence was sufficient for a jury to find the essential elements of abuse beyond a reasonable doubt. The victim's relationship with the defendant was so tense that she had sought and obtained consecutive 209A orders against him. In light of this relationship and the other circumstances enumerated above, the jury were entitled to find that the defendant's belligerent words and conduct caused a reasonable apprehension in the victim that he intended to harm her.

In addition, the victim specifically testified that the defendant's conduct scared and upset her. She also testified that she feared he would carry through his stated intention to kill her. The victim's fear, although neither necessary nor determinative, is material in finding the defendant guilty. See *Commonwealth* v. *Tarrant*, 367 Mass. 411, 417 n.5 (1975). In these circumstances, a jury were more than justified in finding beyond a reasonable doubt that the victim's fear was reasonable. Therefore, the motion for a required finding of not guilty was properly denied.

2. *The defendant's First Amendment claim.* The defendant contends that his conviction criminally sanctioned him for statements that constituted speech protected by the First Amendment. He specifically argues that his words did not amount to "fighting words," which may be constitutionally proscribed. Furthermore, he asserts that he had a constitutionally protected right to respond to the victim's statements.

The defendant's reasoning is misguided. He quotes our opinion in *Commonwealth* v. *A Juvenile*, 368 Mass. 580, 589 (1975), quoting *Chaplinsky* v. *New Hampshire*, 315 U.S. 568, 571-572 (1942), stating that "a statute seeking to regulate what we have broadly termed offensive speech will stand only if that statute . . . is so narrowly drawn as to be limited to 'fighting words.' " "Fighting words," however, are not the only type of expression for which the protections of the First Amendment do not extend. In *A Juvenile*, we also concluded

---

instruction to this effect, we fail to see any basis for this contention. Furthermore, even before he made this last statement, the defendant's conduct was sufficient for the jury to find that the victim feared the defendant would return to harm her, and such fear was reasonable.

that a provision of the same statute forbidding threats to use physical force did not violate the First Amendment. *Id.* at 596-598.

The defendant was not convicted for merely using offensive speech. He was convicted of violating an order to refrain from abusing the victim. He was found criminally liable for conduct that placed the victim in reasonable apprehension of imminent serious physical harm. This is equivalent to the crime of assault and, as we shall discuss later, similar to the offense of threatening a crime. Clearly, the First Amendment does not protect conduct that threatens another. See *Madsen* v. *Women's Health Center, Inc.*, 114 S. Ct. 2516, 2529 (1994); *Watts* v. *United States*, 394 U.S. 705, 707 (1969). See also *Roberts* v. *United States Jaycees*, 468 U.S. 609, 628 (1984) ("violence or other types of potentially expressive activities that produce special harms distinct from their communicative impact . . . are entitled to no constitutional protection").

We need not comment on the defendant's contention that he has an independent, constitutionally protected right to respond to the victim's statements. Any such right certainly would not include the right to respond with a threat or an assault.

3. *Inconsistent jury verdicts.* The defendant contends that by convicting him of violating G. L. c. 209A and acquitting him of threatening a crime, the jury returned inconsistent verdicts. The defendant asserts that these inconsistent verdicts violated his due process rights.

It is true that the act of placing another in fear of imminent serious physical harm sometimes may contain elements similar to the offense of threatening a crime. The elements of threatening a crime include an expression of intention to inflict a crime on another and an ability to do so in circumstances that would justify apprehension on the part of the recipient of the threat. *Commonwealth* v. *Ditsch*, 19 Mass. App. Ct. 1005, 1005 (1985), citing *Robinson* v. *Bradley*, 300 F. Supp. 665, 668 (D. Mass. 1969). If the threatened crime is one which involves physical harm to the victim, such as a

battery or murder, then evidence that proves the threat may also prove the abuse.

The similarity between the offenses, however, does not require reversal if the defendant is acquitted of one and convicted of the other. In this Commonwealth "the rule is well established in criminal cases that mere inconsistency in verdicts, one of which is an acquittal, will not render the verdict of guilty erroneous even though such inconsistency may have indicated the possibility of compromise on the part of the jury." *Commonwealth* v. *Hamilton*, 411 Mass. 313, 324 (1991), quoting *Commonwealth* v. *Scott*, 355 Mass. 471, 475 (1969).

There is also no Federal constitutional right to consistent verdicts. *Harris* v. *Rivera*, 454 U.S. 339 (1981). Furthermore, the Supreme Court has stated that a jury have the unreviewable power to return a verdict of not guilty for even impermissible reasons. *Id.* at 345-346.

4. *Jury instructions.* The defendant's last argument is that the judge erred in instructing the jury regarding the elements of a violation of G. L. c. 209A, because the judge merely recited the provisions of that statute. Citing the *Gordon* case, the defendant contends that the judge was required to instruct the jury that they were entitled to consider the attendant facts and circumstances in determining whether there was abuse.[7]

Because of the gaps and inaudible portions in the record, we also cannot tell if the judge provided the language that the defendant contends is required by *Gordon*. From what is

---

[7]The defendant apparently made no objection to the judge's instructions. The entire transcript, including those portions pertaining to the jury charge, is riddled with gaps and inaudible segments. Since it is the responsibility of the defendant as the appealing party to provide an adequate record for review, Mass. R. A. P. 8 (b) (3), as amended, 388 Mass. 1106 (1983), we shall not assume that he made a proper objection. Cf. *Hanlon* v. *Commonwealth*, 419 Mass. 1005, 1005-1006 (1995). We note that the defendant does not claim in his brief that he made a proper objection. Therefore, we review for any errors which created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Pares-Ramirez*, 400 Mass. 604, 609 (1987). *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

available, it appears that the judge did include a general instruction concerning the use of circumstantial evidence.[8] The language at issue is essentially a variation of that instruction. Therefore, the defendant argues for language similar to the circumstantial evidence instruction specifically to be included in the jury instruction regarding the elements of abuse. We decline to require such an inclusion.

As we have stated, the judge has discretion to "choose the form of expression best adapted to make the law intelligible to the jurors." *Commonwealth* v. *Silva*, 388 Mass. 495, 507 (1983). It is not necessary for the judge to "instruct on every subsidiary fact and possible inference." *Commonwealth* v. *Chasson*, 383 Mass. 183, 188 (1981). Furthermore, "the law does not require repetition of the same thought at each turn." *Commonwealth* v. *Doucette*, 391 Mass. 443, 452 (1984), quoting *Commonwealth* v. *Peters*, 372 Mass. 319, 324 (1977). Therefore, there is no error in omitting the language at issue, and, thus, no likelihood of a miscarriage of justice.[9]

*Judgment affirmed.*

---

[8]The transcript shows that the judge instructed the jury that: "And, in this case, there is - [inaudible] - and probably all cases, there are two types of evidence to be considered. The direct evidence and circumstantial evidence." The judge's instruction on circumstantial evidence involves two pages in the transcript.

[9]Also, we disregard the defendant's arguments regarding the order to vacate since the case was not tried on that theory. The judge properly did not submit this theory to the jury. See *Commonwealth* v. *Gordon, supra.*