NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-204

D.S.

vs.

T.B.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Plaintiff D.S. and defendant T.B., former romantic partners, share two teenaged children, the older of whom we shall call Ted. In November 2020, the plaintiff obtained an ex parte G. L. c. 209A order against the defendant protecting himself and the children. In December 2020, the order was extended for one year after a two-party hearing before a different judge (judge or hearing judge) at which the parties and Ted testified and documentary evidence was introduced.

On December 14, 2021, the parties appeared before the hearing judge on the plaintiff's request for an extension, which was allowed. Both parties testified at the hearing. The judge found that the plaintiff sustained his burden of proof. The defendant appealed, maintaining that there was insufficient

evidence of a reasonable fear of imminent physical harm.[1]  We affirm.

Background.  The judge credited the plaintiff's testimony at the first extension hearing in December 2020.  The plaintiff testified that he obtained the ex parte order after an argument on November 26, 2020, during which the defendant threatened to kill the plaintiff if he did not get away from her.  The plaintiff testified that the defendant threatened to stab and kill him and that, as she did so, she put her hand on a knife she always carried.  After the plaintiff called the police, the defendant left the home.  Similar incidents had happened, according to the plaintiff, "at least once every six months" for "[y]ears."  The plaintiff also testified that the defendant sometimes threatened that if he was not there to care for the children, "whatever happens will be [his] fault."[2]  The judge also heard and saw evidence that the defendant threatened, about a year earlier, to kill herself.

Ted testified as well.  He heard the defendant tell the plaintiff to get out of the house and that she would stab the plaintiff with a knife she carried.  He was scared when the defendant told the plaintiff to get out of the house, explaining

[1] The plaintiff did not file a brief.
[2] The plaintiff explained that the children had special needs requiring constant supervision and that he was their sole caregiver.

that "my dad's always home and he's the one that cooks for us, you know, cleans, and if he's gone, . . . it raises concern [sic] about who's going to take care of us."  There was also evidence that, in the following days, the defendant sent Ted several text messages to which Ted did not respond, then changed the passwords on streaming services the children used to watch television before sending Ted a text message that she was "coming home tomorrow and things are going to be a lot different."  According to the plaintiff, Ted felt the message was a threat and was scared.

The order that issued in December 2020 prohibited the defendant from contacting the plaintiff and Ted but permitted contact with the younger child by text message, e-mail message, mail, and videoconference.

At the second extension hearing held on December 14, 2021, the plaintiff stated that he and the children continued to fear the defendant based on "[a]ll the things from last time" and "how she's acted this entire time."  Specifically, since the first extension hearing, (1) the defendant made an unfounded report about the plaintiff to the Department of Children and Families and (2) the defendant filed a Probate and Family Court action seeking immediate custody of the children based on a claimed violation by the plaintiff of the G. L. c. 209A order. A hearing in the Probate and Family Court action, on the

3

defendant's motion for temporary orders allowing her visitation with the children, was scheduled to take place about one month after the second extension hearing.

Discussion. The inquiry at the second extension hearing was whether the plaintiff demonstrated by a preponderance of the evidence "that the fear of imminent serious physical harm remain[ed] reasonable." MacDonald v. Caruso, 467 Mass. 382, 387 (2014). See Iamele v. Asselin, 444 Mass. 734, 739-741 (2005); G. L. c. 209A, § 1 (b). We review the judge's decision for abuse of discretion or error of law, see Constance C. v. Raymond R., 101 Mass. App. Ct. 390, 394 (2022), mindful that we do not substitute our judgment for that of "the judge [who] heard testimony from the parties and was in the best position to assess their demeanor." S.V. v. R.V., 94 Mass. App. Ct. 811, 813 (2019). See Iamele, supra at 741.

"To determine whether the plaintiff's apprehension of anticipated physical force was reasonable, we first 'look to the actions and words of the defendant in light of the attendant circumstances'" (citation omitted). Constance C., 101 Mass. App. Ct. at 394-395. Here, the defendant placed her hand on a knife and made a "true threat" to kill the plaintiff. O'Brien v. Borowski, 461 Mass. 415, 424 (2012). "This is equivalent to the crime of assault," Commonwealth v. Robicheau, 421 Mass. 176, 183 (1995); was sufficient to show abuse beyond a reasonable

4

doubt, see id. at 182-183; and sufficed under the lesser standard of a preponderance of the evidence. The defendant's suicide threat also created an objectively reasonable fear of imminent physical harm. See, e.g., Constance C., supra at 396.

The fear of imminent physical harm remained reasonable at the second extension hearing where there was evidence that the defendant made a false report about the plaintiff to the Department of Children and Families and instituted an action seeking custody of children with whom she was not in contact.[3] See Iamele, 444 Mass. at 740 (child custody litigation likely to engender hostility relevant to reasonableness of fear). The judge could infer that the defendant's bringing a custody action based on the legal impossibility of the plaintiff's violating an order protecting him from abuse was itself "a form of abuse," Mitchell v. Mitchell, 62 Mass. App. Ct. 769, 781 n.22 (2005), such "that extending the order for an additional year furthered the legislative purpose of protecting an abuse victim from the

---

[3] Although the order permitted her to communicate with the younger child, the defendant stopped doing so.

5

impact of family violence." <u>Callahan</u> v. <u>Callahan</u>, 85 Mass. App. Ct. 369, 375 (2014).

There was no error and no abuse of discretion.

<u>Extension order dated December 14, 2021, affirmed</u>.

By the Court (Green, C.J., Shin & Hershfang, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered: April 26, 2023.

---

[4] The panelists are listed in order of seniority.