SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. ARICKSON CRUZ

 
 Docket:
 SJC-13595
 
 
 Dates:
 October 7, 2024 - December 13, 2024
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Dewar, JJ.
 
 
 County:
 Bristol
 

 
 Keywords:
 Threatening. Constitutional Law, Freedom of speech and press, Double jeopardy. Evidence, Threat, Intent. Intent. Statute, Validity, Construction. Practice, Criminal, Instructions to jury, Double jeopardy. Jury and Jurors.
 
 

       Complaint received and sworn to in the New
Bedford Division of the District Court Department on November 25, 2020.
      The case was tried before Kristen A.
Stone, J.
      After review by the Appeals Court, 103
Mass. App. Ct. 1121 (2024), the Supreme Judicial Court granted leave to obtain
further appellate review.
      Rachel T. Rose for the defendant.
      Stephen C. Nadeau, Jr., Assistant District
Attorney, for the Commonwealth.
      WENDLANDT, J.  True threats -- serious expressions conveying
that an author means to commit an act of unlawful violence against the
recipient -- generally fall outside the aegis of the First Amendment to the
United States Constitution.  Whether
words comprise a true threat is measured by an objective standard that turns on
what the words reasonably convey to the recipient in light of the circumstances
of their issuance.  Nonetheless, the
author's subjective mental state is relevant where, as here, the State seeks to
punish the author.  In particular, the
United States Supreme Court recently determined in Counterman v. Colorado, 600
U.S. 66, 69 (2023), that the First Amendment requires the State to show that
the author "consciously disregarded a substantial risk that his
communications would be viewed as threatening violence" before it may
punish him for conveying a true threat.
      The jury in the present matter, which was
tried prior to Counterman, were not instructed that, in order to convict the
defendant, Arickson Cruz, for making a true threat, they needed to find beyond
a reasonable doubt that he acted with the required mens rea; accordingly, his
conviction violates the First Amendment. 
Further concluding that G. L. c. 275, § 2 (threatening to
commit a crime statute), survives the defendant's facial challenge, and that
the prohibition against double jeopardy does not preclude a retrial in the
present circumstances, we vacate the defendant's conviction and remand for a
new trial.
      1. 
Background.  a.  Facts.[1] 
In 2018, the victim ended a five-year long dating relationship with the
defendant.  Following the breakup, the
victim blocked the defendant's telephone calls on her cellular telephone and
generally avoided communicating with him. 
Nevertheless, the defendant continued to send text messages to her.  Occasionally, the defendant, who had lived
with the victim during their relationship and had moved out following their
breakup, parked nearby her home.
      Approximately two years after the breakup,
the defendant sent the victim two text messages.  The first message was sent at 4:29 A.M.; the
defendant stated, in part, "I wish u all die bitch I'm so hurt and it
still hurt fuck u I hope u die bitch." In the second text message, sent
approximately thirty minutes later, the defendant told the victim, "It
hurts so much it hurts a lot oh."[2]
      The following day, the victim and her band
performed at a fundraiser at an adult day care center.  After the performance, the defendant's two
children, with whom the victim had become acquainted during her years-long
relationship with the defendant, ran to her; she hugged them. 
      Later that afternoon, when the fundraiser
ended, the defendant followed the victim as she walked towards her vehicle to
leave.  He was "screaming and
yelling" at her.  
      Approximately two hours later, the
defendant sent the text message that formed the basis for the prosecution's
case that he violated the threatening to commit a crime statute.  Specifically, the text message stated,
"I swear to god if you touch my keys one more time I'll punch you in your
fucking face Bitch, I'm not going to repeat myself again."  The victim, who had not had occasion recently
to touch the defendant's "keys," understood that the defendant was
referring to his kids.  
      b. 
Procedural history.  Following a
jury trial, the defendant was convicted of violating the threatening to commit
a crime statute.  After his conviction,
but while his appeal was pending, the Supreme Court's decision in Counterman,
600 U.S. 66 (2023), issued.  The Appeals
Court affirmed his conviction in an unpublished decision.[3]  See Commonwealth v. Cruz, 103 Mass. App. Ct.
1121 (2024).  The defendant sought
further appellate review, which we granted.
      2. 
Discussion.  a.  Mens rea and true threats.  As noted supra, true threats historically
have not been protected by the First Amendment. 
See Commonwealth v. Sholley, 432 Mass. 721, 726 (2000), cert. denied,
532 U.S. 980 (2001), quoting Commonwealth v. Robicheau, 421 Mass. 176, 183
(1995) ("[T]he First Amendment does not protect conduct that threatens
another").  See also Counterman, 600
U.S. at 74, quoting Virginia v. Black, 538 U.S. 343, 359 (2003) ("'True
threats' of violence is [an] historically unprotected category of
communications"); Roberts v. United States Jaycees, 468 U.S. 609, 628
(1984) (true threats, like "other types of potentially expressive
activities that produce special harms distinct from their communicative impact,
. . . [were] entitled to no constitutional protection");
National Ass'n for the Advancement of Colored People v. Claiborne Hardware Co.,
458 U.S. 886, 916 (1982), quoting Samuels v. Mackell, 401 U.S. 66, 75 (1971)
(Douglas, J., concurring) ("Certainly violence has no sanctuary in the
First Amendment . . .").
      True threats are "serious
expression[s]" of the speaker's "intent to commit an act of unlawful
violence."  Black, 538 U.S. at
359.  Whether words constitute a true
threat is measured objectively, considering whether, in light of the attendant
circumstances, the words justifiably caused the recipient to fear violence.[4]  See Commonwealth v. Kerns, 449 Mass. 641, 653
n.18 (2007).  "Whether the speaker
is aware of, and intends to convey, the threatening aspect of the message is
not part of what makes a statement a threat . . . ."  Counterman, 600 U.S. at 74, citing Elonis v.
United States, 575 U.S. 723, 733 (2015).
      The Supreme Court recently concluded,
however, that the First Amendment "shield[s] some true threats from
liability."  Counterman, 600 U.S. at
75 (discussing chilling effect that absence of mens rea element might
engender).  A true threat may be punished
criminally only if the speaker had "some subjective understanding of the
threatening nature of [the] statements." 
Id. at 69.  Specifically, to
convict a person for making a true threat, the State must prove that the person
acted at least recklessly –- that is, the person "is aware 'that others
could regard his statements as' threatening violence and 'delivers them anyway.'"  Id. at 79, quoting Elonis, 575 U.S. at 746
(Alito, J., concurring in part and dissenting in part).
      b. 
Jury instructions.  Here, the jury
were not instructed that they were required to find that the defendant acted
with the mens rea necessary to convict him. 
As the law required before Counterman, the jury were instructed only
that,
"In order to
prove the defendant guilty of [threatening to commit a crime], the Commonwealth
must prove four things beyond a reasonable doubt:  First, that the defendant expressed an intent
to injure a person or property of another now or in the future; Second, that
the defendant intended that his threat be conveyed to a particular person;
Third, that the injury that was threatened, if carried out, would constitute a
crime; and Fourth, that the defendant made the threat under circumstances which
could reasonably have caused the person to whom it was conveyed to fear that
the defendant had both the intention and the ability to carry out the
threat." 
      Contrary to the Commonwealth's argument,
these instructions did not require the jury to find that the defendant was
aware that others could regard his statement as threatening violence and
delivered it anyway.[5]  See Counterman,
600 U.S. at 79.  Accordingly, his conviction
violates the First Amendment and must be vacated.  See id. at 69.
      c. 
Overbreadth.  The defendant
contends that the threatening to commit a crime statute is facially overbroad.
      "In determining whether a statute is
facially overbroad, we look not only to the language of the statute but to any
limiting construction we have grafted on that language in interpreting the
statute."  O'Brien v. Borowski, 461
Mass. 415, 422 (2012), citing Commonwealth v. A Juvenile, 368 Mass. 580, 585
(1975).  "And we have not hesitated
to construe statutory language narrowly to avoid constitutional overbreadth,
especially where we discern a legislative intent that the statute prohibit only
constitutionally unprotected speech." 
O'Brien, supra, citing Commonwealth v. Welch, 444 Mass. 80, 99, 100 n.16
(2005).  See Commonwealth v. Templeman,
376 Mass. 533, 538 (1978). 
      The threatening to commit a crime statute
provides:
"If
complaint is made to any such court or justice that a person has threatened to
commit a crime against the person or property of another, such court or justice
shall examine the complainant and any witnesses who may be produced, on oath,
reduce the complaint to writing and cause it to be subscribed by the
complainant" (emphasis added).
G. L.
c. 275, § 2.  We previously
have concluded that the Legislature intended this statute to reach only
"cases of 'true threats' that would not qualify as protected speech."  Sholley, 432 Mass. at 727 (defining elements
to prevent "conviction based on protected speech").  Consistent with that determination, and in
order to "effectuate the legislative intent" to criminalize only
unprotected speech,[6] we construe the statute to require that the Commonwealth
prove beyond a reasonable doubt, inter alia, that the defendant acted with at
least a mens rea of recklessness -- that is, that the defendant consciously
disregarded a substantial risk that the communication would be viewed as
threatening violence and delivered it anyway.[7]  See Counterman, 600 U.S. at 69.  Accordingly, we conclude that the threatening
to commit a crime statute is not overbroad.
      d. 
Double jeopardy.  The defendant
also maintains that the evidence at his trial was legally insufficient to
permit a jury to conclude beyond a reasonable doubt that he possessed the mens
rea required by the First Amendment, and that double jeopardy therefore
precludes a retrial.  We disagree.
      Rooted in the Fifth Amendment to the
United States Constitution and in our common law, "the prohibition against
double jeopardy generally precludes retrial if the Commonwealth presented
insufficient evidence at the original trial to support the defendant's
conviction."  Commonwealth v.
Guardado, 493 Mass. 1, 5 (2023), cert. denied, 144 S. Ct. 2683 (2024).  The prohibition protects defendants against
the possibility that "prosecutors could treat trials as dress rehearsals
until they secure the convictions they seek."  Currier v. Virginia, 585 U.S. 493, 498
(2018).  Where the evidence presented at
a first trial does not support a finding of "the essential elements of the
crime beyond a reasonable doubt," the prohibition against double jeopardy
generally precludes a retrial. 
Commonwealth v. Brown, 479 Mass. 600, 608, 611 (2018).  In short, the prohibition against double
jeopardy precludes the Commonwealth from "getting a second bite at the
proverbial apple" (citation omitted). 
Guardado, supra.
      In this case, the defendant's trial took
place before the Supreme Court's decision in Counterman, which announced for
the first time that the First Amendment requires proof that the defendant
acted, at the least, recklessly.  See
United States vs. Dodson, U.S. Ct. App., No. 22-3998, slip op. at 11 (6th Cir.
Feb. 21, 2024) (noting Counterman "newly instituted [a] recklessness
standard" for true threat liability). 
Prior to the Supreme Court's decision, it was established that true
threats as a category were not protected by the First Amendment; a true threat
was measured by an objective standard and could be punished thereby.  See Counterman, 600 U.S. at 72-73 ("we
decide today" that true threat prosecutions require proof of at least mens
rea of recklessness); Sholley, 432 Mass. at 727 (true threat offense did not
include subjective element).
      Following Counterman, however, some true
threats will be protected.  This is a
change in the law.  Counterman, 600 U.S.
at 72 (acknowledging law prior to Court's decision that "[t]rue threats of
violence, everyone agrees, lie outside the bounds of the First Amendment's
protection").  Thus, at the time of
trial, the Commonwealth had no reason to introduce evidence of the defendant's
state of mind to establish his culpability for sending a true threat or to
insist that the jury be instructed to include the mens rea requirement.  See Guardado, 493 Mass. at 6-7 (unforeseen
change in jurisprudence of Second Amendment to United States Constitution
following trial for firearm violation did not preclude retrial to permit
Commonwealth to meet its burden of establishing licensure element).
      Moreover, as a general matter, when we
vacate a conviction, double jeopardy precludes a retrial only where the
evidence at the first trial was insufficient to establish an essential element
of the crime.  See Guardado, 493 Mass. at
5, citing Commonwealth v. Bolling, 462 Mass. 440, 453 (2012).  Here, although the defendant was tried prior
to the Court's decision in Counterman, the evidence was sufficient to allow a
rational jury to find beyond a reasonable doubt that he had the requisite mens
rea.  
      The evidence included that, despite the
passage of nearly two years since the victim ended their relationship, the
defendant remained upset about the breakup. 
He knew where the victim lived; despite the victim's efforts to block
communications with the defendant, he continued to send her text messages and
occasionally to park his vehicle near her home. 
In the pre-dawn hours of the day prior to the true threat at issue, he
had sent the victim two text messages. 
In the first one, he stated "I hope u die bitch"; and in the
second, sent just one-half hour later, he expressed desperation.  A couple of hours prior to the true threat at
issue, the defendant had followed the victim as she left the fundraiser, "screaming
and yelling" at her as she moved towards her vehicle.  Then, in the text message at issue, he
explicitly threated violence against the victim, stating, "I'll punch you
in your fucking face Bitch."  In
that same text message, he warned, "I'm not going to repeat myself
again."  Viewed in the light most
favorable to the Commonwealth, a properly instructed jury could have found
beyond a reasonable doubt that the defendant consciously disregarded a
substantial risk that his text message would be viewed as threatening violence
and delivered it anyway.  In these
circumstances, double jeopardy does not prevent the Commonwealth from retrying
the defendant.
      3. 
Conclusion.  Based on the
foregoing, the defendant's conviction is vacated, and the matter is remanded to
the District Court for a new trial, if the Commonwealth chooses to pursue one.
So ordered.
Appendix.
Threat to Commit
Crime
      The defendant is charged with having
threatened to commit a crime against the person or property of another.  Threatening [a person with a crime against
his or her person or property] [a person by threatening a crime against someone
else or their property] is itself a crime.
      In order to prove the defendant guilty of
this offense, the Commonwealth must prove five things beyond a reasonable
doubt:
      First: 
That the defendant expressed an intent to injure a person, or property
of another, now or in the future;
      Second: 
That the defendant intended that the threat be conveyed to a particular
person;
      Third: 
That the injury that was threatened, if carried out, would constitute a
crime;
      Fourth: 
That the defendant made the threat under circumstances which could
reasonably have caused the person to whom it was conveyed to fear that the defendant
had both the intention and the ability to carry out the threat; and
      Fifth: 
That the defendant was aware of or consciously disregarded a substantial
risk that the communication would be viewed as threatening violence.  This element requires that the defendant was
aware that others could regard his statement as threatening violence and yet
the defendant delivered it anyway.

footnotes

[1] Because the
defendant contends that principles of double jeopardy preclude a retrial on the
ground that the evidence was insufficient to establish the required mens rea
under Counterman, 600 U.S. at 69, 82, we recite the facts the jury could have
found in the light most favorable to the Commonwealth.  See Commonwealth v. Fitzpatrick, 463 Mass.
581, 582 (2012), citing Commonwealth v. Latimore, 378 Mass. 671, 676-677
(1979).

[2] The trial
judge gave a limiting instruction that the jury could consider these two text
messages solely in weighing whether the circumstances on the following day were
such that the victim could reasonably have feared "the defendant had both
the intention and the ability to carry out the threat" in the text message
at issue.  See discussion, infra.

[3] The Supreme
Court's decision was not raised below.

[4] The term
"true" in "true threats" distinguishes jests, hyperbole,
and other statements that, in context, do not convey a real possibility that
violence will follow.  See Watts v.
United States, 394 U.S. 705, 708 (1969) (per curiam); Commonwealth v. Chou, 433
Mass. 229, 236 (2001) ("The term 'true threat' has been adopted to help
distinguish between words that literally threaten but have an expressive
purpose such as political hyperbole, and words that are intended to place the
target of the threat in fear, whether the threat is veiled or
explicit").  

[5] The
Commonwealth places particular weight on the second requirement in the jury
instructions, which concerns whether the defendant intended his message to
reach the victim.  The intent to deliver
a statement to a particular person is, of course, different from a subjective
understanding of its threatening nature. 
See United States vs. Dodson, U.S. Ct. App., No. 22-3998, slip op. at 11
(6th Cir. Feb. 21, 2024) (noting difference between "knowingly
commit[ting] the actus reus -- sending the threatening messages -- rather than
by accident or mistake" and Counterman requirement "that the
defendant be aware in some way of the threatening nature of his
communications").

[6] Contrary to the
defendant's contention, construing a statute to avoid unconstitutional
overbreadth does not require "the 'quintessentially legislative work' of
rewriting State law" where, as here, there is no indication of a
legislative intent to prohibit constitutionally protected speech.  Ramirez v. Commonwealth, 479 Mass. 331, 339
(2018), quoting Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320,
329 (2006).  See O'Brien, 461 Mass. at
422.

[7] We also take
this opportunity to provisionally revise the model jury instructions for this
offense as set forth in an Appendix to this opinion.